IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| A.D. ALBERTON, | : | CIVIL ACTION |
|  | : | NO. 06-3755 |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| COMMONWEALTH LAND TITLE | : |  |
| INSURANCE CO., | : |  |
|  | : |  |
| Defendant. | : |  |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    JANUARY 31, 2008

Plaintiff A.D. Alberton ("Alberton") brings this action
on behalf of himself and others similarly situated against
Defendant Commonwealth Land Title Insurance Company
("Commonwealth"), alleging that Commonwealth overcharged him and
others for title insurance when they refinanced their homes.
Currently before the Court is plaintiff's motion for class
certification.  For the reasons that follow, the Court will grant
the motion, certifying a class of plaintiffs who purchased title
insurance from Commonwealth within ten years of a prior purchase
of title insurance.  In doing so, it joins a growing list of
courts around the country that have certified similar classes of
insurance purchasers bringing similar claims against insurance
sellers and arising from practices nearly identical to the sales

-1-

practices challenged here.[1]  See Chesner v. Stewart Title Guar.
Co., No. 06-0476 (N.D. Ohio Jan. 23, 2008); Cohen v. Chicago
Title Ins. Co., 242 F.R.D. 295 (E.D. Pa. 2007); Woods v. Stewart
Title Guar. Co., No. 06-705, 2007 WL 2872219 (D. Md. Sept. 17,
2007); Mitchell-Tracey v. United Gen. Title Ins. Co., 237 F.R.D.
551 (D. Md. 2006); Dubin v. Sec. Union Title Ins. Co., 832 N.E.2d
815 (Ohio Ct. App. 2005); In re Coordinated Title Ins. Cases, 784
N.Y.S.2d 919 (N.Y. Sup. 2004); Mitchell v. Chicago Title Ins.
Co., No. 02-017299, 2003 WL 23786983 (Minn. Dist. Ct. Dec. 22,
2003).


I.   BACKGROUND

     A.   Facts

          1.   Commonwealth's operations

          Defendant Commonwealth is engaged in the business of
selling title insurance.  The purchase of title insurance
frequently accompanies a mortgage or refinancing transaction.
The insurance provides a guarantee to the owner and/or lender
that the property being purchased or refinanced is free and clear
of liens and encumbrances, other than those specifically included

---

          [1]   Despite the number of other courts that have granted
similar motions, the Court has an independent duty to conduct a
rigorous analysis of the instant motion.  Moreover, although the
proposed class is nearly identical to other classes certified,
the class claims differ from those asserted by many of the other
classes.  For example, in Cohen, 242 F.R.D. 295, the class is
pursuing only three claims whereas this class asserts nine.

in the title policy.  There are two types of title insurance policies available: an owner's policy, which is generally purchased by the borrower-homeowner for the protection of the borrower's property interest, and a lender's policy, which is generally paid for by the borrower but purchased for the protection of the lender's security interest in the property.

Commonwealth uses two sales methods that are relevant to this case.  First, in some areas, Commonwealth engages in direct operations, negotiating directly with consumers for the sale of title insurance.  Second, Commonwealth maintains agency contracts with title agencies.  These contracts authorize the agencies to negotiate insurance contracts, conduct closings and collect money on Commonwealth's behalf.  Commonwealth retains the right to audit and review the closings, related documents and payments.  Unless the distinction between Commonwealth and the title agencies is relevant, the Court refers to them collectively as "Commonwealth."

The rates that Commonwealth may charge for insurance are set out in the Title Insurance Rating Bureau of Pennsylvania Manual ("TIRBOP Manual"),[2] which is governed by the Pennsylvania

---

[2]   The Manual contains rates that have been proposed by the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP") and have been approved for all of TIRBOP's members, including Commonwealth.  Subsequent to the events giving rise to this case, the TIRBOP Manual was amended.  All references are to the version of the Manual in force during the proposed class period.

Title Act, 40 P.S. 910-1 <u>et seq.</u>  The TIRBOP Manual provides for a mandatory three-tiered pricing structure.  The default Basic Rate applies when the purchaser of title insurance does not qualify for a special rate.  TIRBOP Manual § 5.50, Ex. 36, App. to Def.'s Resp. to Pl.'s Mot. for Class Certification (doc. no. 74).  The Reissue Rate applies when a property owner purchases title insurance within ten years of obtaining a policy issued on the same property.  <u>Id.</u> § 5.3.  The Reissue Rate is ninety percent (90%) of the Basic Rate.  <u>Id.</u> § 5.50.  Finally, if the property owner applies for title insurance within three years of obtaining a previous policy, the Refinance Rate, which is eighty percent (80%) of the Reissue Rate, applies.  <u>Id.</u> § 5.6.

Section 5.3 set forth the Reissue Rate as follows.

> A purchaser of a title insurance policy shall be entitled to purchase this coverage at the reissue rate if the real property to be insured is identical to or is part of real property insured 10 years immediately prior to the date the insured transaction closes when evidence of the prior policy is produced notwithstanding the amount of coverage provided by the earlier policy.

<u>Id.</u> § 5.3.  Section 5.6 described the Refinance Rate in slightly different language.

> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple

ownership, the Charge shall be 80% of the
reissue rate.

Id. § 5.6.


2.   Facts relating to the named plaintiff

In 1996, Alberton purchased a property, obtained a
mortgage for that property and purchased title insurance from a
third party in connection with the mortgage.  In 2001, he
refinanced the mortgage on the property.  He purchased title
insurance, again from a third-party insurance company and
received the Reissue Rate on that policy.

In 2003, Alberton again refinanced.  At this time, he
purchased title insurance from Camelot Abstract Incorporated
("Camelot"), a title agency selling insurance on behalf of
Commonwealth.  Although Alberton's 2001 purchase of title
insurance made him eligible for the Refinance Rate, he received
only the Reissue Rate, paying a total of $1,155.38.  If Alberton
had received the Refinance Rate, he would have received a larger
discount, thereby saving $234.08.

At the time of his purchase of title insurance from
Camelot, Alberton did not produce evidence of his prior
insurance policy.  However, Commonwealth did perform a title
search on Alberton's property.  That search disclosed the 1996
and 2001 mortgages and title searches.

-5-

B.    <u>Procedural History</u>

This case was removed from the Philadelphia Court of Common Pleas on August 23, 2006.  Discovery was conducted for almost a year.  On October 16, 2007, the Court held a hearing on the instant motion for class certification.

## II.  MOTION FOR CLASS CERTIFICATION

A.    <u>Class Definition</u>

Alberton asks the Court to certify a class of

> All persons or entities who, from July 25, 2000 until August 1, 2005, paid premiums for the purchase of title insurance from defendant Commonwealth Title Insurance Company, in connection with a refinance of a mortgage or fee interest with respect to real property located in Pennsylvania that was insured by a prior title insurance policy within ten years of the refinance transaction, and were not charged the applicable Reissue Rate or Refinance Rate discount for title insurance on file with the Pennsylvania Insurance Commissioner.

Pl.'s Mem. in Support of Mot. for Class Certification (Pl.'s Mem.) (doc. no. 65-2), at 10.

B.    <u>Class Claims</u>

Plaintiff asserts nine claims on behalf of himself and the putative class: 1) breach of express contract; 2) breach of implied contract; 3) money had and received; 4) violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"); 5) fraudulent misrepresentation; 6)negligent

misrepresentation; 7) negligent supervision; 8) accounting; and 9) unjust enrichment.  The elements of the claims differ, but each turns on the question of whether plaintiff was required to request a discounted rate and produce evidence showing his entitlement to that rate when he purchased title insurance from Commonwealth, or whether Commonwealth should have automatically offered plaintiff the discounted rate upon learning, through the title search, that he had refinanced in the past three or ten years.

Plaintiff argues that an insurance purchaser was entitled to a reduced rate "whenever the title search [which Defendant was required by law to conduct] reveal[ed] events recorded in the chain of title that would lead any reasonable title agent to conclude that a prior title policy was issued in connection with such event."  Pl.'s Mem. in Support of Class Certification 7 (doc. no. 65).  Specifically, plaintiff argues that any time defendant's agents discovered in the title search that an insurance purchaser had refinanced the property within the past 3 or 10 years, defendant's agents should have known that a prior insurance policy had been issued.  Plaintiff bases this argument on the assertion that "institutional lenders require title insurance in nearly all instances when they provide a mortgage."  Id.  Defendant strenuously contests this purported fact.

Instead, defendant argues that the language of the Manual requires the insurance purchaser to provide evidence of the prior insurance policy rather than relying on Commonwealth to uncover the policy in its title search. Commonwealth claims that, contrary to plaintiff's allegations, it is possible to obtain a mortgage or refinancing without title insurance in a variety of circumstances. Therefore, it is impossible to conclude that every member of the proposed class who purchased title insurance from Commonwealth within 3 or 10 years of obtaining a mortgage or refinancing was eligible for a reduced premium from Commonwealth. Insisting that a past mortgage or refinancing does not mean a previous purchase of title insurance, defendant argues that it had no obligation to provide a discounted rate when the title search revealed such an event.

C.   Legal Standard

A party seeking class certification bears the burden of proving that the action satisfies the four threshold requirements of Federal Rule of Civil Procedure 23(a) and one of the three subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997). Thus, plaintiff must first satisfy Rule 23(a) by showing

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

> representative parties are typical of the
> claims or defenses of the class, and (4) the
> representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  If the threshold 23(a) requirements are

met, the class may be certified if one of the three requirements

of 23(b) is satisfied.  Plaintiff seeks certification under

23(b)(3), which provides that certification may be granted if

> the court finds that the questions of law or
> fact common to the members of the class
> predominate over any questions affecting only
> individual members, and that a class action is
> superior to other available methods for the
> fair and efficient adjudication of the
> controversy.  The matters pertinent to the
> findings include: (A) the interest of members
> of the class in individually controlling the
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation
> concerning the controversy already commenced
> by or against members of the class; (C) the
> desirability or undesirability of
> concentrating the litigation of the claims in
> the particular forum; (D) the difficulties
> likely to be encountered in the management of
> a class action.

Id.

In deciding a motion for class certification, the

court must "refrain from conducting a preliminary inquiry into

the merits."  Barnes v. Am. Tobacco Co., 161 F.3d 127, 138-39

(3d Cir. 1998); see also Wachtel v. Guardian Life Ins. Co. of

Am., 453 F.3d 179, 183 n.5 (3d Cir. 2006).  When ordering class

certification, a district court must define "the precise

parameters defining the class and a complete list of the claims,

issues, or defenses to be treated on a class basis." <u>Wachtel</u>,
453 F.3d at 185.  To aid in the certification inquiry, "an
increasing number of courts require a party requesting class
certification to present a 'trial plan' that describes the
issues likely to be presented at trial and tests whether they
are susceptible to class-wide proof." <u>Id.</u> at 186 (internal
quotations omitted).


    B.   <u>Application</u>

        1.   <u>Rule 23(a) Requirements</u>

           a.   <u>Numerosity</u>

Rule 23(a)(1) requires that the class be "so numerous
that joinder of all members is impracticable." Fed. R. Civ. P.
23(a).  "No minimum number of plaintiffs is required to maintain
a suit as a class action, but generally if the named plaintiff
demonstrates that the potential number of plaintiffs exceeds 40,
the first prong of Rule 23(a) has been met." <u>Stewart v.
Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001).  When determining
numerosity, "a court may accept common sense assumptions." <u>In
re Linerboard Antitrust Litig.</u>, 203 F.R.D. 197, 205 (E.D. Pa.
2000).

Plaintiff estimates that the Class includes tens or
hundreds of thousands of individuals.  A Commonwealth official
estimated that Commonwealth issued an average of 40,000 policies

per year in Pennsylvania during the class period.  Day Dep. 171-72, Ex. W., Pl.'s Mot. for Class Certification (doc. no. 65).  If even a small percentage of the policy purchasers are class members, the claims are easily too numerous to allow for feasible joinder.

Defendant does not offer evidence to contradict the size of the class, but argues that estimating the number of class members is difficult because the file of each person who purchased title insurance during the class period will need to be reviewed to determine whether the person is a class member.  While this may be true, this argument addresses the feasibility of class treatment, not the number of class members.  "Numerosity does not require evidence of the exact number or identification of the proposed class." Linerboard, 203 F.R.D. at 205.  Rule 23's requirement of numerosity is satisfied.


        b.   Commonality

"[T]he commonality standard of Rule 23(a)(2) is not a high bar; it does not require identical claims or facts among class members, as 'the commonality requirement will be satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class.'" Chiang v. Veneman, 385 F.3d 256, 265 (3d Cir. 2004) (quoting Johnston v. HBO Film Mgmt., 265 F.3d 178, 184 (3d Cir. 2001)).

All class members share the factual question of the state of the title insurance industry during the class period, specifically whether a past mortgage necessarily meant a past purchase of title insurance.  Therefore, the commonality requirement of Rule 23(a) has been satisfied.

c.   <u>Typicality</u>

"To evaluate typicality, we ask whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.  [F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."

<u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 295-96 (3d Cir. 2006) (internal citations omitted).  "'[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct."  <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 311 (3d Cir. 1998) (quoting <u>Baby Neal v. Casey</u>, 43 F.3d 48, 58 (3d Cir. 1994)).

"When a defendant engaged in a 'common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the

absent class members.'" <u>Cohen v. Chicago Title Ins. Co.</u>, 242
F.R.D. 295, 299 (E.D. Pa. 2007) (quoting <u>Linerboard</u>, 203 F.R.D.
at 207).

Plaintiff satisfies the typicality requirement.
Alberton's claims arise from the identical practice or course of
conduct that gives rise to the claims of the class members,
namely, Commonwealth's practice of charging a non-discounted
rate unless the purchaser presented evidence of previous title
insurance and regardless of whether the title search revealed a
prior mortgage or refinancing.  <u>See, e.g.</u>, <u>id.</u> (holding, in
similar factual situation, that claims of each class member were
"identical" to those of named plaintiff and that typicality
requirement was therefore satisfied).

Defendant opposes a finding of typicality, arguing
first that, because Alberton presented no evidence of previous
title insurance, he had no entitlement to a discounted rate and
therefore cannot be typical of persons who were charged the
wrong rate.  However, this argument is essentially another way
of saying that plaintiff's legal theory is wrong and that more
evidence than the results of the title search was needed to
trigger a discounted rate.  <u>See</u> <u>Dubin</u>, 832 N.E. 2d at 818-19
(rejecting identical challenge to class certification as merits-
based).  The Court will not delve into the merits of the
underlying case when addressing a motion for certification.

-13-

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974).

Second, defendant argues that, because Alberton purchased his title insurance from an agent and not from Commonwealth directly, Alberton's claim cannot be typical of those putative class members who purchased from another agent or from Commonwealth itself. However, whether or not Commonwealth is responsible for the actions of its agents is itself a question raised by the claims of many class members. Alberton's claim of negligent supervision by Commonwealth of its agents likewise presents questions typical of the class because it alleges a Commonwealth policy of conducting inadequate supervision and review of the activities of agents.

Other courts have rejected the argument that the use of agents by a title insurance company defeats certification. See, e.g., Mitchell-Tracey v. United Gen. Title Ins. Co., 237 F.R.D. 551, 558 (D. Md. 2006) (describing argument that local agents defeat typicality as not "remotely persuasive"). In Coordinated Title Insurance Cases, the court found the claims of the named plaintiff typical of those of the class members despite the fact that named plaintiffs purchased title insurance through an intermediary. 784 N.Y.S. 2d 919 (Table), 2004 WL 690380, at *4 (N.Y. Sup. Ct. Jan. 8, 2004). In fact, the court listed questions regarding whether the title insurance company was liable for the actions of its title agents among the common

-14-

questions of law and fact likely to predominate at trial.  Id.
at *4.

A third challenge to typicality arises from the
differences between §§ 5.6 and 5.3 of the Manual.  Alberton's
claims are based on § 5.6, which provides that, when a policy is
purchased within 3 years of the closing of a previously insured
mortgage or fee interest, "the Charge shall be" the Refinance
Rate.  On the other hand, the class definition encompasses class
members who purchased insurance from Commonwealth outside the
three-year period described in § 5.6, but within ten years of a
previous purchase of title insurance.  These class members must
look to § 5.3 of the Manual, which provides that a discounted
rate shall apply "when evidence of the prior policy is
produced."

The difference in language suggests that one could
plausibly read § 5.3 to require the purchaser to produce
evidence of a prior policy, but read § 5.6 as requiring a
discounted rate when any evidence of a prior policy is found,
regardless of whether it was produced by the purchaser or found
elsewhere.[3]  In other words, Commonwealth may have breached §

---

[3]     This argument was advanced by a defendant in a similar
case pending in this district.  In Cohen v. Chicago Title Ins.
Co., the defendant argued that the named plaintiff was ineligible
for a discounted rate because she "failed to present evidence of
previous insurance, as required by section 5.3, but not by 5.6,
of the TIRBOP Manual."  242 F.R.D. 295 (E.D. Pa. 2007).

5.6 of the Manual, but not § 5.3.

        In Broussard v. Meineke Discount Muffler Shops, Inc.,
the Fourth Circuit reversed the certification of a class
asserting breach of contract where the class members had entered
into different, although similar, contracts with Meineke.  The
Court concluded that "the differences between the [contracts]
raise the distinct possibility that there was a breach of
contract with some class members, but not with other class
members.  In such a case, the plaintiffs cannot amalgamate
multiple contract actions into one."  155 F.3d 331, 340 (4th
Cir. 1998).  After identifying several other individual issues
that would need to be resolved, the Fourth Circuit held that the
named plaintiff's claim was not typical of the claims of the
class members.  Id.

        The Third Circuit criticized the reasoning of
Broussard in In re Linerboard Antitrust Litigation, although
Linerboard does not specifically address the issue of different
contracts.  305 F.3d 145, 161-62 (3d Cir. 2002).  In Linerboard,
the Court held that individual issues do not automatically
defeat typicality.  Id.  The plaintiffs in Linerboard were from
different states and were therefore subject to differing
statutes of limitations, giving rise to the possibility that
some, but not all, class members' claims were time-barred.  The
court held certification appropriate, notwithstanding the

statute of limitations issue, because common questions
predominated.  First, the statute of limitations question would
require some individual analysis, but the plaintiffs basically
could be divided into two statute of limitations groups.
Second, the proof required to analyze the statute of limitations
issue would be similar for all plaintiffs; only the applicable
law would differ.  Third, common questions abounded aside from
the statute of limitations question because all the claims arose
from a common course of conduct by defendants.

Similarly in this case, the two different sections of
the Manual do not defeat typicality.  As in Linerboard, the
injuries complained of arise from a uniform policy of requiring
a purchaser to seek the discounted rate, rather than relying on
evidence from other sources to apply the rate.  Although two
different Manual provisions are involved, evidence regarding the
state of the industry, the intent of the drafters of the Manual
and Commonwealth's practices regarding the implementation of the
Manual will be relevant to all claims, regardless of which
section applies.  The differences between the claims created by
the two Manual provisions pale in comparison to the similarities
between the class members' claims.  However, as discussed below,
the Court will certify two subclasses based on the two different
provisions of the Manual.  Therefore, even if typicality is not
met for the class as a whole, under the revised class

-17-

definition, the typicality requirement will be met as to each subclass.[4]

    d.   <u>Adequacy of Representation</u>

       Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requires a determination of (1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class." <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 185 (3d Cir. 2001). The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." <u>Beck</u>, 457 F.3d at 296.

    i.   <u>Named plaintiff's interests</u>

       Alberton adequately represents the interests of class members who rely on § 5.6, but not those relying on § 5.3. As described above, the differing language of the two sections suggests that Commonwealth may have breached § 5.6, but not §

_____

    [4]   As part of the certification of subclasses, the Court will order the addition of a named plaintiff whose claims are typical of the subclass that relies on § 5.3. For the reasons discussed above, Alberton's claims are typical of the subclass relying on § 5.6.

5.3.  Moreover, because the "shall be" mandate of § 5.6 appears
to set a higher standard than § 5.3, the contrast between the
two provides support for the argument that the drafters intended
to place more responsibility on Commonwealth vis-a-vis § 5.6
purchasers than § 5.3 purchasers.  In other words, Alberton
might point to the language of § 5.3 to show that while some
purchasers had to provide evidence, he, as a purchaser covered
by § 5.6, did not.  The strength of Alberton's claim depends, in
part, on pointing out a weakness in the claims of class members
who rely on § 5.3.  _____

_____Because Alberton's interest conflicts with the
interests of class members who rely on § 5.3, Alberton is not an
adequate representative of those class members.  However, the
preceding analysis of numerosity, commonality and typicality
requires the conclusion that, with an appropriate
representative, the claims of § 5.3 class members satisfy Rule
23(a) and, as described below, Rule 23(b)(3).  Therefore, the
Court concludes that the use of subclasses would be appropriate
to recognize the differences between class members relying on §
5.3 and those relying on § 5.6.  See Wetzel, 508 F.2d 239, 253
(3d Cir. 1975) (holding that subclassification is required where
a class representative adequately represents one subclass of
members, but not another subclass of members).  Thus, the Court
will certify the proposed class in two subclasses, reflecting

the two operative provisions of the Manual.

Because Alberton is currently the only class representative, certification of the § 5.3 subclass will be conditional on plaintiffs moving to add a named plaintiff who adequately represents this subclass. Cf. Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083, 1089 (3d Cir. 1975) (approving practice of allowing addition of named plaintiff if court determines that the original named plaintiff does not adequately represent all class members); U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 408 (1980) (holding burden is on the plaintiff, not the court, to submit proposals for subclasses). But see Cohen, 242 F.3d 295 (certifying a class representative who, like Alberton, purchased title insurance from defendant within three years of a prior purchase of title insurance. The class representative was certified to represent the class of persons who had purchased insurance from the defendant within ten years of a prior purchase and who had not received a discounted rate).

### ii. Class counsel

Plaintiff's counsel are well-qualified and experienced in the area of class action litigation. Each has been appointed class counsel in other similar actions against title insurance companies. Defendant does not challenge the adequacy of plaintiff's counsel. Def.'s Resp. in Opp. to Pl.'s Mot. for

Class Cert. (doc. no. 74), June 14, 2007, at 65 n.8.

The Court concludes that the proposed class, with the subclasses described above, meets Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy of representation.


2.   Rule 23(b) Requirements

Alberton seeks certification pursuant to Rule 23(b)(3), which requires that "the court find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Factors to be considered include 1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; 2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; 3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and 4) the difficulties likely to be encountered in the management of a class action.  Id.


a.   Predominance

Whether or not common questions predominate in this action is best addressed on a claim-by-claim basis.

i.   Contract claims

Plaintiffs assert causes of action for breach of express contract[5] (count I), or in the alternative, breach of implied contract[6] (count II).  Whether or not the TIRBOP Manual forms part of any contract between a purchaser and seller of title insurance is a question common to the class.  Because plaintiffs argue that the existence of a contract is shown by the standard paperwork used in a title insurance transaction, and not by any particular statements made by a title agent to an individual purchaser, the existence of the claimed contracts may be determined on a class-wide basis.  Moreover, if a contract that includes the Manual provisions is found to have been

---

[5]      "[F]or a plaintiff to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages."  Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. 2002).

[6]      "A contract, implied in fact, is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." Rissi v. Cappella, 918 A.2d 131, 140 (Pa. Super. 2007) (citing Martin v. Little, Brown and Co., 450 A.2d 984, 987 (1981)).  If plaintiffs establish the existence of an implied contract, they will also need to show breach of a duty imposed by the contract and damages.  See supra n.5.

formed, the meaning of the TIRBOP provisions may be determined for each subclass without investigating individual transactions. Thus, common questions predominate in these claims.

ii.  <u>Unjust enrichment/Money had and received</u>

Plaintiffs assert claims for money had and received[7] (count III) and unjust enrichment[8] (count IX).  Both of these claims depend on the meaning of the TIRBOP Manual.  If Commonwealth breached a duty to provide plaintiffs with a discounted rate, then Commonwealth has received payment from plaintiffs to which it was not entitled.  Neither of these causes of action requires inquiry into the individual circumstances of a transaction, but rather can be resolved on a class-wide basis.

iii. <u>UTPCPL</u>

---

[7]    "A claim for 'money had and received' is a common law action 'by which the plaintiff could recover money paid to the defendant, the money usually being recoverable because (1) the money had been paid by mistake or under compulsion, or (2) the consideration was insufficient.'"  <u>Springfield Twp. v. Mellon PSFS Bank</u>, 889 A.2d 1184, 1186 n.2 (Pa. 2005).

[8]    "Unjust enrichment has been described as benefits incurred on [sic] defendant by plaintiff, appreciation of the benefits by the defendant, and acceptance of such benefits under circumstances in which it would be inequitable for defendant to retain the benefits without payment of value."  <u>Pender v. Susquehanna Twp.</u>, 933 A.2d 1085, 1094 (Pa. Cmwlth. 2007) (citing <u>Limbach Co., LLC v. City of Philadelphia</u>, 905 A.2d 567 (Pa. Cmwlth. 2006)).

Third, plaintiffs assert a claim under the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 et seq (count IV). "The UTPCPL provides a private right of action for any 'person who purchases . . . goods or services primarily for personal, family, or household purchases and thereby suffers any ascertainable loss of money or property' because the seller engaged in 'unfair or deceptive business practices.'" Scardino v. Am. International Ins. Co., 2007 WL 3243743, at *7 (E.D. Pa. Nov. 2, 2007) (quoting § 201-9(2)(a); 201-3 (2007)).

A plaintiff seeking to recover under the UTPCPL once was required to prove all the elements of common law fraud; however, a 1996 amendment made the law "less restrictive."[9] Commonwealth v. Percudani, 825 A.2d 743, 747 (Pa. Cmwlth. 2003). Plaintiffs must now show conduct that is "deceptive to the ordinary consumer," but need not prove all the elements of fraud.[10] Id. at 746. Thus, individualized proof of justifiable

_____

[9] Section 202-2(4)(xxi) now prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons. Stat. Ann. § 202-2(4)(xxi) (2007). Prior to 1996, the section addressed only "fraudulent," not "deceptive," conduct. See 1996 Pa. Legis. Serv. 1996-146 (West).

[10] Pennsylvania courts are divided as to the import of the 1996 amendment to the UTPCPL: the superior courts continue to require plaintiffs under the UTPCPL to prove all the elements of common law fraud whereas the Commonwealth court has abandoned that requirement. See Com. ex rel. Corbett v. Mason, 903 A.2d 69, 74 (Pa. Cmwlth. 2006) (recognizing split among Pennsylvania

reliance is no longer required to succeed on a claim under the UTPCPL.  Instead, "[a] policy of not applying published insurance rates, if proven, would satisfy the requirement of a deceptive practice under the UTPCPL."  <u>Cohen</u>, 242 F.R.D. at 301. Because plaintiffs can succeed as a class by showing Commonwealth's policy rather than individual reliance, common questions predominate on this claim.

iv.  <u>Misrepresentation</u>

Plaintiffs assert claims for fraudulent and/or negligent misrepresentation (counts V and VI).  A fraudulent misrepresentation is a misrepresentation, material to the transaction at hand, that is made falsely with knowledge of, or

---

courts).  The Commonwealth court reasons that "(1) the statute is to be liberally construed to effectuate the legislative goal of consumer protection; (2) the legislature's addition of the words 'or deceptive' signals a less restrictive interpretation; and (3) maintaining the pre-1996 requirement would render the words 'or deceptive conduct' redundant and superfluous, contrary to the rules of statutory construction."  <u>Id.</u>  Other federal courts that have considered the effect of the 1996 amendment have agreed with the Commonwealth court's conclusion.  <u>See, e.g.</u>, <u>Cohen</u>, 242 F.R.D. 295; <u>Flores v. Shapiro & Kreisman</u>, 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002) (holding that, to survive a motion to dismiss, plaintiff seeking relief under UTPCPL need allege only that conduct was deceptive; all six elements of common law fraud are not necessary); <u>In re Patterson</u>, 263 B.R. 82, 91-92 (Bankr. E.D. Pa. 2001).  Persuaded by the reasoning of the Commonwealth court and these federal courts, this Court also concludes that the addition of "deceptive" conduct to the UTPCPL signals the legislature's intent that plaintiffs proceeding under the UTPCPL no longer be required to establish the elements of common law fraud.

-25-

recklessness as to, its falsity and with the intent of misleading another into relying on it.  Gibbs v. Ernst, 647 A. 2d 882, 889 (Pa. 1994).  A plaintiff alleging fraudulent misrepresentation must also show justifiable reliance on the misrepresentation and a resulting injury that was proximately caused by the reliance.  Id.  "Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."  Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 277 (Pa. 2005).

Defendants argue that individual issues predominate in both of these causes of action because both misrepresentation torts require proof of justifiable reliance.  Indeed, "a showing that the plaintiff acted in reliance on the defendant's misrepresentations . . . . would normally vary from person to person," therefore, the question of justifiable reliance "is not generally appropriate for resolution in a plaintiff-class action."  Klemow v. Time, Inc., 352 A.2d 12, 16 n.17 (Pa. 1976); Debbs v. Chrysler Corp., 810 A.2d 137 (Pa. Super. 2002) (rejecting class certification where claims required showing of reliance).  However, individualized proof of reliance is excused

where the defendant has a fiduciary relationship with the plaintiffs. <u>Debbs</u>, 810 A.2d at 157 (citing <u>Basile v. H&R Block, Inc.</u>, 729 A.2d 574, 584 (Pa. Super. 1999), rev'd on other grounds).

Plaintiffs argue that the relationship between Commonwealth and the class members excuses the need for individualized proof of reliance.  To the extent that this argument rests, not on individual characteristics of a particular Commonwealth-purchaser relationship, but on characteristics inherent to every relationship between a seller and purchaser of title insurance, this claim may proceed on a class basis.  However, if it is determined 1) that proving the special relationship will require an examination of each purchaser's relationship with Commonwealth or 2) that no such special relationship existed between Commonwealth and the purchasers, individualized proof of reliance will be required and the class will be de-certified as to the fraudulent and negligent misrepresentation claims.

v.   <u>Negligent supervision</u>

In Count VII, Alberton alleges that Commonwealth's negligent supervision of its agents led to the agents' failure to apply the discounted rates.  This claim rests, not on a failure of supervision peculiar to a particular agent or

regarding one transaction, but on an alleged company-wide policy of providing a degree of supervision that Alberton claims is inadequate.  The claim asserts that Commonwealth engaged in a common course of conduct toward its agents and, through the agents, toward the class members.  This claim can be resolved on a class-wide basis.  See Cohen, 242 F.R.D. at 299 (certifying a negligent supervision claim for class treatment).

### vi.  Accounting

Sixth and finally, plaintiffs assert a claim for an accounting (count VIII).  Plaintiffs contend that Commonwealth has been unjustly enriched by its improper charging of the class members and that the class is entitled to an accounting of the money improperly gained by Commonwealth.  Because plaintiff's claim for an accounting rests on his other claims, which the Court has already concluded are suitable for certification, the accounting claim will likewise proceed on a class basis.

### b.  Superiority

A class action is superior to other available methods of adjudicating the dispute between Commonwealth and the class. Each plaintiff's damages are too small to justify the time and expense of individual litigation.  For example, Mr. Alberton's alleged injury is in the amount of around $250.  However,

without the litigation, defendant stands to retain an enormous, and allegedly unwarranted, profit.  A recognized benefit of class actions is that they allow for aggrieved persons to seek redress "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages."  Deposit Guar. Nat'l Bank of Jackson, Miss. v. Roper, 445 U.S. 326, 339 (1980); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997).  Because the expense of individual actions relative to the possible recovery renders individual actions all but impossible, a class action is the superior method.  Realistically, it is the only method by which plaintiffs can pursue these claims.

Moreover, the four factors enumerated in Rule 23(b)(3) favor certification.  First, because the claims of the class members are virtually identical, no class member has a greater or lesser interest in controlling the action than Alberton.  Cf. Cohen, 242 F.R.D. at 300 (reaching the same conclusion regarding a similar named plaintiff).  Second, the parties have not pointed to any similar litigation against Commonwealth in Pennsylvania that prevents certification of this action.  Third, this Court is an able and appropriate forum.  Fourth and finally, the Court concludes that the class is manageable.

In its opposition to class certification, defendant raises the same objection that has been rejected by a number of

-29-

courts face almost identical cases.  Defendant argues that a class action is not manageable in this case because an individual review of each file will be necessary to determine whether an insurance purchaser is even a class member and also to compute individual damages awards.  While it may be true that each file must be reviewed individually, under plaintiff's theory, this will be a virtually automatic process that looks only at whether the title search showed a prior mortgage or refinancing and whether the customer received a discounted rate.  Cf. Cohen, 242 F.R.D. at 302 ("'it strains credulity to suggest, as defendants do, that the defendants (and their agents) lack the ability to compile information on insurance policies that they have issued'") (quoting Mitchell-Tracey, 237 F.R.D. at 560).  Moreover, "[t]he size of the class and the need for individual damages calculations is not a reason to deny class certification."  Cohen, 242 F.R.D. at 300 (citing In re Cmty. Bank of N. Va., 418 F.3d 277, 305-06 (3d Cir. 2005)).  Like other courts that have rejected arguments like defendant's, this Court concludes that the class will be manageable.

Thus, the Court finds that common questions predominate and that a class action is the superior method for the adjudication of the class members claims.

**V.    CONCLUSION**

      For the reasons stated above, plaintiff's motion for class certification will be granted with the subclassification described in this memorandum.  An appropriate order will follow.

```
                        IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                                :    CIVIL ACTION
     A.D. ALBERTON,             :    NO. 06-3755
                                :
          Plaintiff,            :
                                :
     v.                         :
                                :
                                :
     COMMONWEALTH LAND TITLE    :
     INSURANCE CO.,             :
                                :
          Defendant.            :
```

O R D E R

**AND NOW**, this **31st day of January 2008**, it is hereby

**ORDERED** that, for the reasons set forth in the accompanying

memorandum, plaintiff's motion for class certification (doc. no.

65) is **GRANTED** in part.  The class shall consist of all persons

or entities who, from July 25, 2000 until August 1, 2005, paid

premiums for the purchase of title insurance from defendant

Commonwealth Title Insurance Company, in connection with a

refinance of a mortgage or fee interest with respect to real

property located in Pennsylvania that was insured by a prior

title insurance policy within ten years of the refinance

transaction, and were not charged the applicable Reissue Rate or

Refinance Rate discount for title insurance on file with the

Pennsylvania Insurance Commissioner.  The class shall be divided

into two sub-classes.  Subclass A shall include all class

members whose purchase of insurance from Commonwealth was made

-32-

within the three years of the prior purchase of title insurance. Subclass B shall include all class members whose purchase of insurance from Commonwealth was made more than three years but within ten years of the date of the prior purchase of title insurance.

It is further **ORDERED** that plaintiffs are granted leave to amend the complaint to include a named plaintiff who adequately represents Subclass B.


**AND IT IS SO ORDERED.**


  S/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**