IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.D. ALBERTON & | : | CIVIL ACTION |
| MARK C. KESSLER | : | NO. 06-3755 |
| Plaintiffs, | : | |
| v. | : | |
| COMMONWEALTH LAND TITLE INSURANCE CO. | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      March 17, 2010

Before the Court is Plaintiffs' proposed class notice plan and Defendant's objections thereto. For the reasons below, the Court will overrule the objections and approve Plaintiffs' proposed notice plan.

I. **BACKGROUND**

A. Factual Background

This case involves a class action brought against Commonwealth Land Title Insurance ("Defendant") on behalf of individuals who allegedly were overcharged for title insurance purchased between July 25, 2000 and August 1, 2005. Defendant is in the business of selling title insurance policies. The rates that Defendant may charge for its policies are governed by the Title Insurance Rating Bureau of Pennsylvania Manual (the "TIRBOP

Manual").[1]  The TIRBOP Manual sets forth the following mandatory three-tiered pricing structure: (1) Default Rate - applicable when a purchaser does not qualify for a special rate; (2) Reissue Rate - 90% of the Default Rate and applicable when a property owner purchases title insurance within ten years of obtaining a policy on the same property; and (3) Refinance Rate - 80% of the Reissue Rate and applicable when a property owner purchases title insurance within three years of obtaining a policy on the same property.

Section 5.3 of the TIRBOP Manual provides the following with respect to eligibility for the Reissue Rate:[2]

> A purchaser of a title insurance policy shall be entitled to purchase this coverage at the reissue rate if the real property to be insured is identical to or is part of real property insured 10 years immediately prior to the date the insured transaction closes when evidence of the prior policy is produced notwithstanding the amount of coverage provided by the earlier policy.

TIRBOP Manual § 5.3.

Section 5.6 of the TIRBOP Manual provides the following with respect to eligibility for the Refinance Rate:

> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured

---

[1] The TIRBOP Manual is governed by the Pennsylvania Title Act, 40 Pa. C.S. § 910-1 et seq.

[2] Subsequent to the events giving rise to this litigation, the TIRBOP Manual was amended.  All references in this Memorandum are to the version of the TIRBOP Manual in force during the proposed class period.

are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate.

Id. § 5.6. Plaintiffs allege that Defendant did not adhere to the mandatory pricing scheme established by these sections by failing to charge the appropriate discounted rate for qualified purchasers of title insurance.

    B.    <u>Procedural History</u>

On January 31, 2008, the Court entered an order conditionally certifying the class (the "Certification Order"). The Certification Order established two subclasses, pursuant to the following class definition:

> The class shall consist of all persons or entities who, from July 25, 2000 until August 1, 2005, paid premiums for the purchase of title insurance from defendant Commonwealth Title Insurance Company, in connection with a refinance of a mortgage or fee interest with respect to real property located in Pennsylvania that was insured by a prior title insurance policy within ten years of the refinance transaction, and were not charged the applicable Reissue Rate or Refinance Rate discount for title insurance on file with the Pennsylvania Insurance Commissioner. The class shall be divided into two sub-classes. Subclass A shall include all class members whose purchase of insurance from Commonwealth was made within the three years of the prior purchase of title insurance. Subclass B shall include all class members whose purchase of insurance from Commonwealth was made more than three years but within ten years of the date of the prior purchase of title insurance.

<u>Alberton v. Commw. Land Title Ins. Co.</u>, 247 F.R.D. 469, 482-83 (E.D. Pa. 2008), <u>rev'd on other grounds</u>, <u>Hunt v. U.S. Tobacco Co.</u>, 538 F.3d 217 (3d Cir. 2008). The Certification Order specified that the class was certified on a conditional basis and

final certification was contingent on the appointment of a named plaintiff to represent Subclass B.  Id. at 483.

On March 13, 2008, a Second Amended Complaint was filed that identified Plaintiff Mark C. Kessler as a member of Subclass B.  On January 27, 2010, the Court entered an Order approving Mark C. Kessler as the class representative for Subclass B.

As the class certification issues have been settled, Plaintiffs have submitted a proposed class notice plan (the "Notice Plan") for approval by the Court.  The parties have agreed on a Notice of Pendency of Class Action (the "Notice") to be distributed to potential class members.  Although Defendant does not object to the proposed form of Notice or the proposed methods of distribution of the Notice under the Notice Plan, Defendant does object to the mailing list of recipients of the Notice compiled by Plaintiffs.  The Court will address the sufficiency of the Notice Plan and Defendant's objections in turn.

**II. DISCUSSION**

    A.    <u>Applicable Law</u>

Under Fed. R. Civ. P. 23(c)(2)(B), notice must be given to potential class members by the best notice practicable under the circumstances for all classes certified under Rule 23(b)(3).

Fed. R. Civ. P. 23(c)(2)(B).[3] This includes individual notice to all potential class members that can be identified through reasonable effort. Notice must state in clear, concise and plain language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) the class member's right to enter an appearance by an attorney; (5) the class member's right to be excluded from the class; (6) the time and manner for requesting exclusion; and (7) the binding effect of judgment on class members. Id. The dictates of this "best notice" provision are strict. According to the Supreme Court, they include an "unambiguous requirement" that "individual notice must be provided to those class members who are identified through reasonable effort." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175-76 (1974). This rigidity is based, in part, on the fact that personal jurisdiction over absent class members only attaches upon the satisfaction of Rule 23(c)(2)'s notice requirements. "In the class action context, the district court

---

[3]  Rule 23(c)(2)(B) states:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances . . . . The notice must concisely and clearly state in plain, easily understood language ... that a class member may enter an appearance through counsel if the member so desires [and] . . . that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded.

Id.

obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 306 (3d Cir. 1998) (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985)); see Georgine v. Amchem Prods., Inc., 160 F.R.D. 478, 490 (E.D. Pa. 1995) ("Because many of the advantages of a class action come at the cost of binding individual class members through the res judicata effects of litigation over which many lack control, Rule 23 offers eligible members of a class the right of exclusion from a class.").

In short, Rule 23(c)(2)(B) requires that class members receive the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. See Beck v. Maximus, Inc., 457 F.3d 291, 301 (3d Cir. 2006).

B. Adequacy of Proposed Notice Plan

Plaintiffs propose to provide the Notice to the potential class members through (1) individual notice sent via first-class mail; (2) distribution of a press release to dozens of Philadelphia newspapers, newswires, and television and radio stations; and (3) website publication. Defendant has not objected to these methods of communication. Plaintiffs have

summarized the forms of notice as follows:

- **Individual notice**: Plaintiffs will send the long-form Notice to class members identified in records produced by Defendant and through third-party discovery. This notice will be sent to approximately 60,000 people (approximately 2/3 of the estimated potential class). Plaintiffs will use its class administrator, Garden City Group, to send out the proposed notice through the mail.

- **Press Release**: Plaintiffs will issue a press release via PR Newswire targeted to Pennsylvania media outlets, including hundreds of newspapers, magazines, wire services, online newspapers, and television and radio stations. This notice will include internal links to the website maintained by the class administrator.

- **Website Publication**: Plaintiffs' counsel shall establish an internet website to provide information related to the class action. Both the mailed individual Notice and press release will contain the listing of the website address.

Plaintiffs contend that any additional publication of the notice is not necessary. Specifically, Plaintiffs contend that paid-for advertisement publication notice is not necessary under these circumstances since the great majority of the refinancing transactions were conducted through an independent title agent. Therefore, Plaintiffs submit that potential class

members would not be familiar with the name "Commonwealth Land Title Insurance Company" such that the use of a paid-advertisement publication would be inefficient. Moreover, Plaintiffs cite to the decreased use of print media as a source of information as another ground to forego the use of print-media notice.

Plaintiffs further argue that the proposed Notice is sufficient because it clearly and concisely provides details about the pending action and how to obtain additional information or submit questions to Plaintiffs' lead counsel. Defendant does not object to the substance of the proposed Notice.

Defendant does object to the proposed mailing list to be used by Plaintiffs on the ground that the mailing list does not track the contours of the class certified by the Court. Defendant contends that the approximately 60,000-person mailing list compiled by Plaintiffs includes non-class members who do not qualify because of one, or more, or the following:

    (1) they did not have a prior mortgage in the look-back period;

    (2) they had a prior mortgage from a private lender, not an institutional lender;

    (3) they refinanced a second mortgage for which there was no title insurance;

    (4) they refinanced a home equity loan or home equity

line of credit for which there was not title insurance at all; and

(5) they refinanced property that was not "identical to or part of" real property previously insured.

Defendant contends that Plaintiffs failed to take any reasonable or practicable action to limit the proposed mailing list and that the overinclusiveness of the list demonstrates that there is no practicable way to determine class membership for this case. Defendant contends that because Plaintiffs have failed to narrow down the mailing list, the Notice Plan should not be approved because it will require an individualized review of the class members' specific transactions.

Defendant's argument as to the overinclusiveness of the proposed mailing list appear is without merit. Defendant's argument as to the "manageability" of the potential class addresses the issue of whether the class should be certified under Rule 23, which the Court has previously addressed. The Notice proposed by Plaintiffs is merely a notice of the pendency of the class action and does not guarantee that an individual receiving a mailed-Notice is entitled to participate. It is true that courts have recognized that it is not necessary to send individual notices to an overinclusive group of people simply because that group contains some additional class members whose identities are unknown. See, e.g., Carlough v. Amchem Prods.,

Inc., 158 F.R.D. 314, 327-28 (E.D. Pa. 1993). These cases, however, deal with a request to send notice to a greater grouping of potential class members, rather than an attempt to limit the amount of people who receive the notice.

### III. CONCLUSION

For the reasons set forth above, the Court concludes that the proposed Notice and Notice Plan are adequate under the circumstances pursuant to Rule 23(c)(2)(B), and Defendant's objections will be overruled. An appropriate order follows.