IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

A.D. ALBERTON &                    :    CIVIL ACTION
MARK C. KESSLER                    :    NO. 06-3755
                                   :
     Plaintiffs,                   :
                                   :
          v.                       :
                                   :
COMMONWEALTH LAND TITLE            :
INSURANCE CO.                      :
                                   :
     Defendant.                    :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          APRIL 24, 2014

## Table of Contents

I.   INTRODUCTION................................................ 3
II.  BACKGROUND.................................................. 4
     A.   Factual Background.................................... 4
     B.   Procedural History................................... 5
III. DEFENDANT'S MOTION TO DECERTIFY........................... 8
     A.   Standard of Review................................... 8
     B.   Applicable Law...................................... 10
          1.   UTPCPL......................................... 11
          2.   Class Action Certification..................... 13
               a. Commonality................................ 13
               b. Typicality................................. 15
     C.   Revisiting Certification............................ 15
          1.   UTPCPL as the Underlying Claim................. 15
          2.   Requirements of Section 5.3 and Section 5.6 of
               the TIRBOP Manual During the Class Period.......... 17
               a. The 2005 Amendments Do Not Interpret or Alter
               the pre-2005 TIRBOP Manual........................ 17
               b. The TIRBOP Manual During the Class Period... 19

   c. A Prior Institutional First Mortgage is Not "Evidence" of a Prior Title Insurance Policy........ 21

  3. Plaintiff's Claims Cannot Satisfy the Commonality or Typicality Requirements of Rule 23............... 29

IV. CROSS MOTIONS FOR SUMMARY JUDGMENT....................... 30

V. CONCLUSION............................................. 31

## I.    INTRODUCTION

This case involves a class action brought against Commonwealth Land Title Insurance ("Defendant") on behalf of individuals who allegedly were overcharged for title insurance purchased between July 25, 2000, and August 1, 2005.  Defendant is in the business of selling title insurance policies.  The rates that Defendant may charge for its policies are governed by the Title Insurance Rating Bureau of Pennsylvania Manual (the "TIRBOP Manual").[1]  The issue before the Court is whether the Defendant failed to charge the appropriate discount rate for certain qualified purchasers of title insurance.

Pending before the Court are Defendant's Motion to Decertify the Class and the parties' cross-motions for summary judgment.

---

[1]    The TIRBOP Manual is governed by the Pennsylvania Title Act, 40 Pa. C.S. § 910-1 et seq.

## II.   BACKGROUND

### A.   Factual Background

The TIRBOP Manual sets forth the following mandatory three-tiered pricing structure: (1) Default Rate—applicable when a purchaser does not qualify for a special rate; (2) Reissue Rate—90% of the Default Rate and applicable when a property owner purchases title insurance within ten years of obtaining a policy on the same property; and (3) Refinance Rate—80% of the Reissue Rate and applicable when a property owner purchases title insurance within three years of obtaining a policy on the same property.

Section 5.3 of the pre-2005 TIRBOP Manual provides the following with respect to eligibility for the Reissue Rate:[2]

> A purchaser of a title insurance policy shall be entitled to purchase this coverage at the reissue rate if the real property to be insured is identical to or is part of real property insured 10 years immediately prior to the date the insured transaction closes when evidence of the prior policy is produced notwithstanding the amount of coverage provided by the earlier policy.

TIRBOP Manual § 5.3.

---

[2]   Subsequent to the events giving rise to this litigation, the TIRBOP Manual was amended.  All references in this Memorandum are to the version of the TIRBOP Manual in force during the proposed class period.

4

Section 5.6 of the pre-2005 TIRBOP Manual provides the following with respect to eligibility for the Refinance Rate:

> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate.

Id. § 5.6.  Plaintiffs allege that Defendant did not adhere to the mandatory pricing scheme established by these sections by failing to charge the appropriate discounted rate for qualified purchasers of title insurance.


B.   <u>Procedural History</u>

This case has a long and complex procedural history. On July 25, 2006, the Complaint was filed in the Court of Common Pleas for Philadelphia County.  Defendants removed the Complaint on August 23, 2006.  After the parties conducted some class discovery, on January 31, 2008, the Court entered an order conditionally certifying the class (the "Certification Order"). The Certification Order established two subclasses, pursuant to the following class definition:

> The class shall consist of all persons or entities who, from July 25, 2000 until August 1, 2005, paid premiums for the purchase of title insurance from

defendant Commonwealth Title Insurance Company, in connection with a refinance of a mortgage or fee interest with respect to real property located in Pennsylvania that was insured by a prior title insurance policy within ten years of the refinance transaction, and were not charged the applicable Reissue Rate or Refinance Rate discount for title insurance on file with the Pennsylvania Insurance Commissioner. The class shall be divided into two sub-classes. Subclass A shall include all class members whose purchase of insurance from Commonwealth was made within the three years of the prior purchase of title insurance. Subclass B shall include all class members whose purchase of insurance from Commonwealth was made more than three years but within ten years of the date of the prior purchase of title insurance.

Alberton v. Commw. Land Title Ins. Co., 247 F.R.D. 469, 482-83 (E.D. Pa. 2008), rev'd on other grounds, Hunt v. U.S. Tobacco Co., 538 F.3d 217 (3d Cir. 2008).  The Certification Order specified that the class was certified on a conditional basis and final certification was contingent on the appointment of a named plaintiff to represent Subclass B.  Id. at 483.

On March 13, 2008, a Second Amended Complaint was filed that identified Plaintiff Mark C. Kessler as a member of Subclass B.  On January 27, 2010, the Court entered an Order approving Mark C. Kessler as the class representative for Subclass B.  On March 17, 2010, the Court approved Plaintiffs' Proposed Class Notice Plan.

On June 15, 2010, the case was stayed pending the Pennsylvania Supreme Court's decision in White v. Conestoga

6

Title Ins. Co., 53 A.3d 720, 722 (Pa. 2012).  In White, the Pennsylvania Supreme Court held that all common law claims alleging title insurance overcharging must be pursued as administrative claims before the Pennsylvania Department of Insurance.  Id. at 735.  Following the decision in White, the Court returned the case to the active docket, and on November 13, 2012, Plaintiffs voluntarily dismissed Counts I-III and V-IX.

On March 18, 2013, Defendant filed its Motion to Decertify the Two Certified Subclasses and Motion for Summary Judgment and Plaintiffs filed their Motion for Partial Summary Judgment.  Subsequently, parties filed their responses, replies, and notices of supplemental authority.  On January 27, 2013, the Court held a hearing on the three motions and the parties presented oral argument.

**III. DEFENDANT'S MOTION TO DECERTIFY**

    A.   <u>Standard of Review</u>

      A party seeking class certification bears the burden of proving that the action satisfies the four threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure and one of the three subdivisions of Rule 23(b). <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591 (1997).  Thus, Plaintiff must first satisfy Rule 23(a) by showing:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  If the threshold 23(a) requirements are met, the class may be certified if one of the three requirements of 23(b) is satisfied.

      Plaintiffs sought certification under 23(b)(3), which provides that certification may be granted if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

8

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Id.

In deciding whether the requirements of Rule 23 have been met to certify a class, the district court must make whatever factual and legal inquiries necessary and must consider all relevant evidence and arguments. In re: Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 307 (3d Cir.2008). The requirements set forth in Rule 23 are not "mere pleading rules" and the court may "delve beyond the pleadings to determine whether the requirements for class certification are satisfied." Id. at 316. Accordingly, a court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action. Id. at 307. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. Id. "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." Id. at

9

309 (quoting <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161, (1982), footnote and other citations omitted).

"Under Rule 23(c)(1), District Courts are required to reassess their class rulings as the case develops." <u>Barnes v. The American Tobacco Co.</u>, 161 F.3d 127, 140 (3d Cir. 1998) (citation omitted). "Changes . . . in the substantive or procedural law will necessitate reconsideration of the earlier [class certification order]." <u>Nelson v. Astra Merck Inc.</u>, No. 98-1293, 1998 U.S. Dist. LEXIS 16599, at *4 (E.D. Pa. Oct. 21, 1998).

Under Federal Rule of Civil Procedure 23(c)(1)(C), "an order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." <u>Gen. Tel. Co.</u>, 457 U.S. at 160 (1982); <u>see also</u> <u>Cohen v. Chicago Title Ins. Co.</u>, No. 06-873, 2013 WL 842706 (E.D. Pa. Mar. 7, 2013) (Sanchez, J.).

B.   <u>Applicable Law</u>

In the six years since the Court initially certified a class in this case, there have been significant changes in the procedural law governing class actions and the substantive law

governing the underlying claim.  See, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550-51 (2011); Hunt v. U.S. Tobacco Co., 538 F.3d 217 (3d Cir. 2008).  It is under this developing jurisprudence that Defendant now moves to decertify the class.

      1.  UTPCPL

      When the Court initially certified that Plaintiffs could proceed with a class action on their Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201–1 et seq. (Count IV), claim the Court held that "common questions predominate on [Plaintiff's UTPCPL] claim" because "individualized proof of justifiable reliance is no longer required to succeed on a claim under the UTPCPL" and thus Plaintiffs "can succeed as a class by showing Commonwealth's policy rather than individual reliance." Alberton, 247 F.R.D. at 481.

      Subsequently, the Third Circuit explicitly overruled the Court's holding.  In Hunt, the Third Circuit, predicting how the Pennsylvania Supreme Court would rule, held that because there is "a broad rule that private plaintiffs must allege justifiable reliance under the Consumer Protection Law" it is thus "imprudent to create an exception . . . for plaintiffs

11

suing under the 'deception' prong of the Consumer Protection

Law's catch-all provision." Hunt, 538 F.3d at 226-27.  The

Third Circuit, addressing the case sub judice, specifically

explained that it "thus think[s] mistaken those trial-court

opinions that rely on the 1996 amendment to conclude that

reliance is no longer required of private plaintiffs suing under

the Consumer Protection Law's catch-all provision," and cited

directly to the Court's earlier decision.[1]  Id. at 225 n. 15

(citing Alberton, 247 F.R.D. at 480-81, other citation

omitted).

---

[1]     Whether the UTPCPL catch all provision requires proof
of justifiable reliance remains a contentious issue in the
Pennsylvania state courts and remains yet undecided by the
Pennsylvania Supreme Court. Compare DeArmitt v. New York Life
Ins. Co., 73 A.3d 578, 592 (Pa. Super. Ct. 2013) ("As in common
law fraud, however, the UTPCPL plaintiff must still prove
justifiable reliance and causation."); with Grimes v. Enter.
Leasing Co. of Philadelphia, LLC, 66 A.3d 330, 337 (Pa. Super.
Ct. 2013) ("As this Court recently held . . . when a plaintiff
alleges a claim under the UTPCPL catchall provision under the
theory of deceptive conduct, the plaintiff need not prove the
elements of common law fraud, including  . . . justifiable
reliance." (internal citations omitted)).  Since the Court held
a hearing in the present case, the Pennsylvania Supreme Court
has granted certiorari on the issue of whether a claim alleged
under the catch-all provision requires a plaintiff to prove
justifiable reliance.  See Grimes v. Enter. Leasing Co. of
Philadelphia, 488 MAL 2013, 2014 WL 349263 (Pa. Jan. 30, 2014)
(granting cert on issue of "[w]hether the Superior Court erred
when it held that a private plaintiff who alleges deceptive
conduct under the UTPCPL's 'catch-all' provision . . . need not
allege and prove justifiable reliance.")  As set forth below,
however, the outcome of Grimes will not impact this case.

In light of these developments, the Court will thus undertake a review of the substantive and procedural law, and apply those developments to this case.  See Barnes, 161 F.3d at 140.

### 2.   Class Action Certification

The developments in procedural law governing class action certification which took place over the six years since the Court certified this claim are numerous.  For the purposes of the present motion, however, only commonality and typicality are relevant to the Court's disposition of Defendant's motion.

#### a.   Commonality

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'" Dukes, 131 S. Ct. at 2550-51 (quoting Fed. R. Civ. P. 23(a)(2)).

The Supreme Court has clarified the standard since this case was certified.  Id.  Although the standard remains the same, "that a putative class of plaintiffs share a common question of law or fact," Rodriguez v. Nat'l City Bank, 726 F.3d 372, 381 n.8 (3d Cir. 2013), the Supreme Court has clarified that the question shared by the class must be the question which

drives litigation and not merely some question common to the entire class.

> Th[e] language [of Rule 23(a)'s commonality requirement] is easy to misread, since any competently crafted class complaint literally raises common "questions." For example: Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways – by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention -- for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Dukes, 131 S. Ct. at 2551 (citations omitted) (internal quotation marks omitted).

b.     Typicality

In determining typicality, the third 23(a)
requirement, the Court must examine whether "the named
plaintiff's individual circumstances are markedly different or .
. . the legal theory upon which the claims are based differs
from that upon which the claims of other class members will
perforce be based." Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d
Cir. 1985). Typicality permits "the court to assess whether the
class representatives themselves present those common issues of
law and fact that justify class treatment . . . ." Id. The
typicality requirement in Rule 23(a) is frequently not satisfied
for the same reason the commonality requirement is not
satisfied. In re Cmty. Bank of N. Virginia, 418 F.3d 277, 303
(3d Cir. 2005) ("'The concepts of commonality and typicality are
broadly defined and tend to merge.'" (quoting Baby Neil ex rel.
Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994))).

C.   Revisiting Certification

1.   UTPCPL as the Underlying Claim

Plaintiffs assert a claim under the UTPCPL (Count IV).
The UTPCPL provides a private right of action for "[a]ny person
who purchases . . . goods or services primarily for personal,

15

family, or household purposes and thereby suffers any
ascertainable loss of money or property" because the seller
engaged in unfair or deceptive business acts or practices.  73
Pa. Cons. Stat. §§ 201-9.2(a), 201-3.  The so-called catch-all
provision defines "unfair or deceptive acts or practices" as
"[e]ngaging in any other fraudulent or deceptive conduct which
creates a likelihood of confusion or of misunderstanding."  73
Pa. Cons. Stat. §§ 201-2(4)(xxi).

Plaintiffs claim that the unfair or deceptive business
practice which Defendants engaged in was charging rates in
excess of those allowed within the TIRBOP Manual during the
class period.  Plaintiffs state that "[f]or liability purposes,
the key question is whether Commonwealth and its agents violated
the TIRBOP Manual and thus overcharged plaintiffs and the Class
in connection with their refinancing transactions."  Pls.' Mot.
for Summ. J. at 17.  According to Plaintiffs, "[a] resolution of
this question will determine whether Commonwealth engaged in
deceptive conduct in violation of the Pennsylvania Unfair Trade
Practices and  Consumer Protection Law."  Id.  Accordingly, the
Court will determine if a class action for a violation of the
UTPCPL based on overcharging under the TIRBOP Manual can satisfy
the requirements of Rule 23 of the Federal Rules of Civil
Procedure.

16

2.    Requirements of Section 5.3 and Section 5.6 of
the TIRBOP Manual During the Class Period

The Court first analyzes Sections 5.3 and 5.6 of the
TIRBOP Manual, as set forth during the class period, to
determine if "evidence" is capable of class wide consideration.

a.    The 2005 Amendments Do Not Interpret or
Alter the pre-2005 TIRBOP Manual

In 2005, the TIRBOP Manual was amended to add, inter
alia, §§ 2.8 and 2.9. Section 2.8 of the 2005 TIRBOP Manual
states that

> Sections 5.3, 5.4, and 5.6 of [the] Manual provide
> that reduced rates are applicable when evidence of
> previous insurance is provided within a specified
> period of time. As evidence of previous insurance, an
> Insurer shall rely upon:
>
>    (a)    the recording (within the period of time
>    specified within the applicable Section of the
>    Manual) of either:
>       (1) a deed to a bona fide purchaser for value,
>       or
>       (2) an unsatisfied mortgage to an institutional
>       lender; . . .

2005 TIRBOP Manual § 2.8.  Section 2.8, an entirely new addition
to the TIRBOP Manual, was the first time that the manual defined
"evidence" of a prior title and thus the first time a prior
institutional mortgage within the look-back period was

17

established as conclusive evidence of prior title insurance.  In
addition, Section 2.9 was added to the TIRBOP Manual, and it
specifies that a "written notice must be provided to every
purchaser of a title insurance policy" which provides notice
that the purchaser may be entitled to a reduced rate if the
conveyance or refinance is occurring within ten years of a
previous insurance of the same property.  Id. § 2.9.

     The parties have specified that they do not contend
that the 2005 amendments were retroactive.  See, e.g., Hr'g Tr.
31, 42, Jan. 27, 2014.[2]  Second, there is a general presumption
under Pennsylvania law that new laws, including amendments, are
not retroactive.  See 1 Pa. Cons. Stat. § 1926 ("No statute
shall be construed to be retroactive unless clearly and
manifestly so intended.").  Third, the 2005 Amendments had an
effective date of August 1, 2005.  This effective date indicates
that the changes would take place on a date certain and in the
future.  If the amendments were meant to merely state the
current rules of the TIRBOP Manual, the effective date would be
surplusage.  To give the effective date meaning, the Court needs
to consider the amendments as changes rather than a mere

---

[2]     Plaintiffs argue that the changes were mere
clarifications (as explained below).  They concede, however,
that if the changes were not clarifications, they would not be
retroactive.  Hr'g Tr. 42.

restatement of the then-existing requirements.  See Holland v.
Marcy, 883 A.2d 449, 455-56 (Pa. 2005) ("In construing [a
statute] . . . the courts must attempt to give meaning to every
word . . . as we cannot assume that the [drafters] intended any
words to be mere surplusage.").  For all these reasons, the
Court will not consider the 2005 Amendments to the TIRBOP Manual
when interpreting the language of the TIRBOP Manual in place
during the class period as the 2005 amendments neither alter nor
interpret the pre-2005 TIRBOP Manual.


     b.     <u>The TIRBOP Manual During the Class Period</u>

     The pre-2005 TIRBOP Manual stated that a discount
should be provided "when evidence of the earlier policy is
produced."  § 5.3.  The TIRBOP Manual did not define evidence.

     As the TIRBOP Manual did not define evidence,
Plaintiffs assert that evidence should be defined as a "ground
for belief; that which tends to prove or disprove something."
Pls.' Mem. for Partial Summ. J. at 22, citing <u>Webster's
Encyclopedic Unabridged Dictionary of the English Language</u> 495
(Revised Ed. 1996).  Even if the Court were to accept
Plaintiff's definition of evidence, for a prior institutional
mortgage to qualify as evidence, it would need to tend to prove

or disprove something, i.e. the existence of a prior title insurance policy.

Thus, for a prior institutional mortgage to tend to prove the existence of title insurance, all (or statistically close to all) institutional mortgages would need to be protected by title insurance.  If not, then the existence of a prior institutional mortgage, even under Plaintiff's offered definition, would merely suggest that there may be a prior title insurance policy, but it would not, in and of itself, tend to prove the existence of prior title insurance in each case. Thus, even under Plaintiff's proffered definition, an insurance agent would need to conduct a further investigation to determine if a prior policy existed before determining the appropriate rate.[3]

_____

[3]    Despite Plaintiffs' unfounded assertions to the contrary, the Pennsylvania Department of Insurance has fined title agents for providing a discount rate where no previous title insurance existed.  Therefore, a title insurance agent would have needed to be sure that a policy existed and that a discount was actually warranted.

Furthermore, in Ricciardi v. Ameriquest Mortgage Co., 164 F. App'x 221 (3d Cir. 2006) (non-precedential), in analyzing potential liability under the Truth in Lending Act, the Third Circuit explained that evidence of a prior policy needed to be presented to obtain the discount because

[u]nder the terms of Section 5.6 of the Rate Manual, a debtor is entitled to the refinance rate only if the previous mortgage was insured. As [the debtor]

c.    A Prior Institutional First Mortgage is Not
      "Evidence" of a Prior Title Insurance Policy

In examining the extensive body of evidence offered by Plaintiffs and Defendant in this case, the Court needs to determine if all (or statistically close to all) prior institutional mortgages were insured by title insurance.  If so, then a prior institutional mortgage could serve, as Plaintiffs assert, as ipso facto evidence of a prior title insurance policy.  If not, then a classwide proceeding would not be able to generate a common answer apt to resolve the litigation.  See Dukes, 131 S. Ct. at 2551.

At oral argument, Plaintiffs' counsel told the Court that for "seven and a half years of litigation, in brief after brief [Plaintiffs] have basically challenged Commonwealth to show [them] a single transaction that's within [the] class where

---

presented no evidence prior to or at the loan closing that his previous mortgage was insured, [the provider] appropriately charged him the default title insurance rate as published in the Rate Manual.

Id. at 226.  To accept Plaintiff's opposite interpretation would be to hold that the rate manual in effect during the class period provided a form of strict liability where the insurer would be liable for failing to provide a purchaser with a discount rate regardless of whether or not the insurer was aware of the existence of a title policy within the look back period.

[there is] a prior institutional first mortgage[4] from the institutional lender where there was not actually the title policy associated with that [mortgage],"[5] and that Defendant had consistently failed to do so.  Hr'g Tr. 56.  Plaintiffs' counsel averred that one or two instances alone would not defeat class certification as "the 99.9 percent of other transactions [should] be able to get the class certified."  Id.  As Plaintiffs correctly stated, this issue is the factor that "really drives . . . the class certification issue,"  and if it were to be the case that Defendant could produce evidence of a statistically significant number of institutional first mortgages which were not accompanied by title insurance, that would defeat the requirement of commonality and/or typicality under Rule 23.

---

[4]     As the class is defined, it is not necessarily limited to first institutional mortgages.  Plaintiff, however, argues that the Court's inquiry should be limited only to first institutional mortgages and that, under this limited set, Plaintiff can succeed.  Accordingly, for the sake of argument, the Court will show that, even if the analysis were limited to first institutional mortgages, the outcome would be the same.

[5]     Plaintiff's counsel actually specified "within our class," but this is a red herring as the class is defined in such a way that if there was no prior title policy that person would not be a member of the class.  Thus, it would be impossible to meet Plaintiffs' counsel's standard.  Instead the Court will interpret counsel's challenge to refer to any instance where there is a first institutional mortgage which is not covered by title insurance.

At oral argument, Defendant responded directly to Plaintiffs' "challenge[] to find a single transaction" where a prior institutional first mortgage was not protected by title insurance.  Hr'g Tr. 94.  For instance, in its Motion to Decertify the Class, Defendant directed the Court to the affidavit of Charles Reiff[6] in which Mr. Reiff states that "[i]n [his] experience in the title industry in Pennsylvania, many institutional lenders [did] not require title insurance in connection with [a] mortgage loan[]" and that from "1990 through 1999, [he] observed that [one particular lender] routinely gave mortgage loans to Pennsylvania borrowers without requiring a policy of title insurance to secure [its] interest in the loan. Some of these loans were second-lien mortgages, but many of them were first-lien mortgages."  Def.'s Mot. to Decertify, App. 292-301, Reiff Aff. 2, July 28, 2009.  Mr. Reiff's affidavit provides several examples of instances where a first institutional mortgage was provided without title insurance. See Reiff Aff. 2-10.

─────────────────

[6]     Mr. Reiff was the Chief Operating Officer of Broker's Settlement Services.  He was the title agent who handled Plaintiff Kessler's title insurance.  In addition, he has more than thirty years of experience in the title and mortgage industry and has handled thousands of mortgage closures.  In his thirty years of experience within the industry, he has worked at several agencies and has acquired a broad knowledge of the title insurance industry.

In addition to Mr. Reiff's affidavit, Defendant provides dozens of additional affidavits, deposition transcripts, declarations, and other pieces of evidence which support the same proposition.  For example, Richard P. Anton, another title agent with over thirty years of experience, stated that he has "been involved in closing real estate transactions in which lending institutions did not require [title insurance]" including "loans for the purchase of real estate."  Def.'s Mot. to Decertify, App. 1-2, Anton Aff. 1, May 3, 2007.  Furthermore, Gregory C. Hook, a title agent with over twenty years of experience, swore in his affidavit that

> First Federal Savings and Loan Association of Greene County and Community Bank N. A., as lenders during [the class period], did not require title insurance as a matter of course for all of the mortgages that [they] received as security for the loans [they] issued during this period.
> During the [class period], these lending institutions issued hundreds of loans (both for home purchases and refinancing of homes) throughout the Commonwealth of Pennsylvania that [he] was involved in where no title insurance was purchased in connection with the securing mortgage.

Def.'s Mot. to Decertify, App. 266-267, Hook Aff. 1-2, April 25, 2007.

Defendant's proofs also show that smaller institutional lenders located outside of the Five-County Area[7] often did not require title insurance on their mortgages, including first mortgages. See, e.g., Def.'s Mot. to Decertify, App. 883, Krug Dep. 88:5-11, Nov. 19, 2009 ("In more rural areas, there's still a tendency by rural lenders not to require title insurance."). Some of these lenders were content to rely on alternative forms of protection, such as attorney opinion letters. See, e.g., Def.'s Mot. to Decertify, App. 73, Duffy Aff. 1, Oct. 6, 2009 ("I know of at least [five] lenders who, [during the class period] have accepted attorney's certificates of title rather than requiring the issuance of title insurance policies");[8] Def.'s Mot. to Decertify, App. 836, Fox Dep. 74:20-25, July 28, 2009 (stating that a number of lenders in the sixty-seven counties where she conducted real estate transactions would protect their mortgage loans with an "attorney opinion letter" instead of title insurance); Def.'s Mot. to Decertify, App. 187, Fromhold Decl. 2, Oct. 20, 2009 ("Between 1999 and 2005, many lenders did not require title

---

[7]    The Five-County area consists of the counties of Bucks, Chester, Delaware, Montgomery, and Philadelphia.

[8]    These banks included "Charleroi Federal Savings Bank, Mercer County State Bank, First Federal Savings and Loan of Greene County, Juniata Valley State Bank, and the First National Bank of Honesdale."  Duffy Aff. 1.

insurance for certain purchase transactions, by way of example, purchase money transactions, instead using alternative products, such as attorney's opinions of title.").

It is true, as Plaintiffs point out, that certain lenders in certain areas of the state required title insurance with limited exceptions.  See Pls.' Consolidated Mem. in Opp'n, Ex. 5, Fugkok Dep; see, e.g., Def.'s Mot. to Decertify, App. 841; App. 854; App. 892-893; App. 893; App. 1153-1154; App. 827; App. 276-277; App. 381; App. 79.  But even under Plaintiffs' own set of facts, Plaintiffs cannot point to a practice of requiring title insurance in connection with the issuance of an institutional mortgage among all lenders in the state such as to be common to all members of the class, even if limited to first mortgages.

Plaintiffs counter-argue that Defendant's "affidavits are . . . misleading by defining 'mortgages' broadly to include home equity loans, loans for new home purchases, and other types of lending."  Pls.' Consolidated Memo in Opposition 11-12 (citation and quotations omitted).  According to Plaintiffs, "[i]t is only under this overbroad definition that the affiants assert that 'mortgages' are not always insured, although several explicitly concede that their assertions are limited to loans having no relevance here." Id. 12 (citations omitted).  As

26

explained above, however, Defendant provides substantial evidence to show that there are numerous first institutional mortgages which were not accompanied by title insurance prior to and during the class period.[9]  See pages 22-27, supra.

The facts in this case lead the Court to the same conclusion that two other district courts reached when applying a comparable rate manual in Ohio to a similar class with a nearly parallel set of facts.[10]  In Chesner v. Stewart Title Guar. Co., a court for the Northern District of Ohio explained that:

> there is no dispute that, as a matter of fact, not all prior mortgages were accompanied by a lender's policy. Even when construed most liberally in Plaintiffs' favor, the language of the Rate Manual simply cannot be read to exclude the requirement of an actual prior policy and substitute in its stead (as Plaintiffs would have it) the mere existence of a prior mortgage.

---

[9]     Furthermore, Plaintiffs, in their response, acknowledge that, at least for certain lenders, there existed a statistically significant percentage of first institutional mortgages which were not insured with prior title insurance. See Pls.' Consolidated Mem. in Opp'n 13 (describing that a "sampling of [one of Defendant's affiant's] files revealed that approximately 90% of closings were insured," thus indicating that approximately 10% were not).

[10]    Notably, the Court cited to both of these cases in previous decisions in this case (those decisions were favorable to Plaintiffs).  Those two courts, as time has passed and legal standards have changed, have come to a similar conclusion as the one the Court reaches today.

No. 06-476, 2009 WL 585823, at *7 (N.D. Ohio Jan. 9, 2009)

(internal citations and footnotes omitted).  Similarly, in

Randleman v. Fidelity Nat. Title Ins. Co., another court in the

Northern District of Ohio similarly found that a statistically

significant number of prior mortgages were not insured with

title insurance:

> [d]espite plaintiffs' evidence, the fact remains that,
> even if many, or even most class members had title
> insurance with their earlier financing, an
> indeterminate number (and, in all likelihood, not a
> small, much less legally insignificant number) did
> not. Whether that number is five percent, ten percent
> or fifty percent of the class as presently defined
> does not matter. The class is sufficiently large that,
> were it to prevail as presently configured, several
> thousand of its members would receive a refund to
> which they never were, and never could have been
> entitled.

264 F.R.D. 298, 304 (N.D. Ohio 2009) aff'd, 646 F.3d 347 (6th

Cir. 2011).  The Court thus concludes that, in this case, the

existence of a prior institutional mortgage, even when limited

to first mortgages, is not evidence per se of prior title

insurance under the pre-2005 TIRBOP Manual.

28

3.   Plaintiff's Claims Cannot Satisfy the Commonality
or Typicality Requirements of Rule 23

Under these facts, to answer the question of whether
each class member was entitled to a discount, the Court would
need to determine on a plaintiff by plaintiff basis, based on
the identity of the lender and the region, whether the prior
institutional mortgage was evidence of a prior policy.[11]  This is
the question driving the current litigation, and commonality
requires that the "classwide proceeding . . . generate common
answers apt to drive the resolution of the litigation."  Dukes,
131 S. Ct. at 2551.  Given the need to determine on an
individual basis whether the presence of a prior institutional
mortgage is evidence of a prior title insurance policy insuring
that mortgage, the Court cannot answer on a class-wide basis
whether the proper discount rate was denied to each member of
the class.

Further, the answer to that question will not
necessarily be the same as among the sub-class representatives
and each member of the two sub-classes as they each present
different factual scenarios.  Therefore, there is not typicality

---

[11]     The outcome is no different even if the inquiry is
limited to institutional first mortgages.  See page 22, supra.

29

under Rule 23.  See In re Community Bank, 418 F.3d at 303;
Eisenberg, 766 F.2d at 786.

Accordingly, the Court will grant Defendant's Motion
to Decertify, and decertify both subclasses, as Plaintiffs fail
to satisfy both the commonality and typicality requirements of
Rule 23 of the Federal Rules of Civil Procedure.[12]

## IV.  CROSS MOTIONS FOR SUMMARY JUDGMENT

As the Court will decertify the class, Plaintiffs'
Motion for Summary Judgment seeking a judgment on the merits as
to the entire class is moot as there is no longer a class.
Defendant's Motion for Summary Judgment, as against the class,
is similarly moot.  Accordingly, the Court will deny both
motions.

Additionally, Defendant, in one paragraph near the end
of its brief for summary judgment, claims that the named
Plaintiffs' individual claims also fail as a matter of law for
the same reasons set forth in the earlier portions of the brief.

---

[12]     See, e.g., Randleman, 264 F.R.D. at 304 (decertifying
a rate title class because a prior institutional mortgage was
insufficient evidence of prior title insurance and explaining
that "Plaintiffs cannot meet the requirements of Rule 23. They
fail to show commonality, since they cannot raise questions of
law and fact common to the class. They also cannot demonstrate
typicality.")

Def.'s Br. for Summ. J. 32.[13]  Though there has been significant briefing, volumes of evidence provided, and over ten notices of supplemental authority filed, almost all of it has related specifically to the class.  There is not sufficient argument and citation to evidence, by the parties, for the Court to determine the specific circumstances under which the named Plaintiffs were issued their respective title insurance policies.  Therefore, the Court will deny Defendant's Motion for Summary Judgment as to the named Plaintiffs without prejudice.

**V.   CONCLUSION**

The Court will grant Plaintiff's Motion to Decertify and the Court will decertify both subclasses.  The Court will deny Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment (as against the class) as moot.  The Court

---

[13]     Defendant's sole argument within the one paragraph is that "Plaintiffs rely solely on a mortgage in their chain of title as satisfying all preconditions of the rate rules, and since a mortgage alone does not, as a matter of law, prove the actual issuance of such a prior policy, summary judgment will be entered against Plaintiffs on their individual claims."  Def.'s Br. for Summ. J. 32.  As explained above, the Court does not necessarily find that, as a matter of law, a prior mortgage can never qualify as evidence of a prior policy.  Thus, this argument by itself cannot entitle Defendant to summary judgment. The Court will not, at this time, determine whether the prior mortgages of the named Plaintiffs would qualify as evidence.

will deny Defendant's Motion for Summary Judgment (as against the named Plaintiffs) without prejudice.

An appropriate order follows.